[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1119 
 On Applications for Rehearing
The opinion of August 18, 2006, is withdrawn and the following is substituted therefor.
In case no. 1040908, Caremark RX, Inc.; American International Group, Inc.; National Union Fire Insurance Company of Pittsburgh, PA; AIG Technical Services, Inc.; and American International Specialty Lines Insurance Company (hereinafter sometimes referred to collectively as "Caremark and the insurers") appeal from an order of the trial court issued on January 31, 2005, and styled "Order on Class Certification." In that order, the trial court declared that it continued to have jurisdiction over new claims asserted by John Lauriello, individually and as class representative, against Caremark and the insurers, by virtue of a settlement agreement approved by the trial court in a 1998 class action in which Lauriello had been a member of the class. Lauriello's newly asserted claims arose out of the negotiations of a settlement agreement entered into in the 1998 class action. Lauriello asserts these new claims on behalf of himself and the same class of plaintiffs certified in the 1998 action. The trial court also declared that no new class-certification analysis or hearing was required before proceeding with Lauriello's newly asserted claims.
In case no. 1040821, Caremark and the insurers petition for a writ of mandamus directing the trial court to set aside its January 31, 2005, order. Caremark and the insurers seek the same relief — the vacation of the January 31, 2005, order — in case no. 1040908. Because the trial court's January 31, 2005, order was not one certifying or refusing to certify a class, we conclude that a writ of mandamus is the *Page 1120 
appropriate method by which to review that order. Therefore, in case no. 1040821, we grant the petition; we dismiss the appeal in case no. 1040908.[1]
In case no. 1040977, Frank G. McArthur, Bill Greene, and Virginia Greene (hereinafter referred to collectively as "McArthur") appeal from the denial of their motion to intervene, filed pursuant to Rule 24(a), Ala. R. Civ. P., in the action filed by Lauriello. In case no. 1040977, we reverse and remand.
 Background Case no. 1040908 and Case no. 1040821 The Class-Action Issue
In his complaint, Lauriello asserts the following: In 1998, the Jefferson Circuit Court certified a nationwide class action styled Griffin v. MedPartners, Inc. (Jefferson Circuit Court; CV-98-00297 et al.). The parties refer to that action as "the MedPartners securities litigation." In that action, MedPartners was alleged to have misrepresented to the public its current and future financial status. Damages in that action were estimated to be approximately $3.2 billion. The trial court certified the complaint for class treatment.
According to the briefs filed with this Court, more than 20 similar class actions were filed in 1998 against MedPartners in various jurisdictions around the country. All of those actions arose out of the same alleged acts and omissions. Lauriello was the named plaintiff in one of those actions; however, his action was dismissed on April 17, 1998.
According to Lauriello, when the MedPartners securities litigation began MedPartners represented that it was near bankruptcy and that the coverage limits of its insurance was $50 million. On January 15, 1999, counsel for the plaintiff class and MedPartners' insurers entered into a "Memorandum of Understanding" to settle all claims asserted in the MedPartners securities litigation, including any other pending class action against MedPartners, for $56 million. Lauriello alleges that counsel for MedPartners represented to the trial court that MedPartners lacked the financial means to pay a more substantial judgment.
On May 3, 1999, at a hearing before the trial court on the proposed settlement, counsel for the plaintiff class represented to the trial court that the proffered settlement agreement was the best recovery the plaintiff class could obtain because of MedPartners' limited financial resources. Attorneys for MedPartners were present and heard these representations to the trial court; they did not attempt to correct, clarify, or rebut these statements. Based on the representations made at that hearing, the trial court conditionally approved the settlement and directed that notice of the proposed settlement be given to the class.
On June 30, 1999, counsel for the plaintiff class submitted an affidavit to the trial court in support of final approval of the proposed settlement in the MedPartners securities litigation. Among other representations, this affidavit provided:
 "The principal factor considered by plaintiffs' counsel in determining to settle the [MedPartners securities litigation] for $56 million was MedPartners' serious financial straits. . . . *Page 1121 
 ". . . .
 "Plaintiffs' counsel, while confident of the strength of plaintiffs' claims, entered into settlement negotiations with the understanding that MedPartners was facing serious problems, including the risk that the company might have to file for Chapter 11 bankruptcy protection. . . . Plaintiffs' counsel also learned that the insurance coverage available provided for maximum benefits of $50 million, and that the policies were wasting assets, meaning that certain defense counsel fees had to be paid out of the policies, thereby reducing the total amount of recovery that might ultimately be collected from the insurers."
The trial court conducted a fairness hearing on July 9, 1999. Counsel for the plaintiff class submitted affidavits and presented arguments to the trial court to the effect that MedPartners lacked the means to pay an amount greater than the amount proposed in the settlement agreement. Attorneys for MedPartners were present and heard these arguments but, again, did not respond to, correct, or clarify the statements. The trial court approved the proposed settlement based on the representations made to it by the parties and their counsel. The trial court entered a final judgment in the MedPartners securities litigation on July 10, 1999, awarding the plaintiff class $56 million. The trial court awarded the class counsel attorney fees in the amount of $18,783,311.11; this amount was to be deducted from the settlement proceeds. Lauriello was a member of the settling class.
In a subsequent and unrelated action between MedPartners and one of its former officers, there was testimony concerning the assertions made in the MedPartners securities litigation, the damage sustained as a result of the alleged wrongdoing, and the settlement agreement entered into in the MedPartners securities litigation. Documents produced in connection with that subsequent litigation revealed that, during the course of the MedPartners securities litigation, MedPartners had obtained significant additional insurance coverage that had not been revealed to the trial court in the MedPartners securities litigation.
The discovery in the unrelated litigation revealed that, in October 1998, after the MedPartners securities litigation had been commenced but before a settlement agreement had been reached, MedPartners paid $22.5 million for an insurance policy providing excess coverage. The excess policy provided "unlimited" coverage, that is, the insurer agreed to pay, without limitation, the damages awarded in the MedPartners securities litigation or the full amount required to settle that action. The excess policy was dated October 22, 1998, but indicated an effective date of September 30, 1998.
Lauriello asserts that he learned of the existence of the excess-insurance policy in September 2003. Counsel for Lauriello asserts that the existence of this additional insurance coverage was not revealed in the course of the settlement negotiations in the MedPartners securities litigation.
On October 22, 2003, Lauriello sued Caremark and the insurers in the Jefferson Circuit Court.[2] Lauriello asserted (1) a claim of misrepresentation based on MedPartners and its insurers' alleged affirmative statements that the coverage limits were $50 million when, in fact, MedPartners had in place an excess-insurance *Page 1122 
policy with unlimited coverage, and (2) a claim of suppression based on MedPartners and its insurers' alleged failure to reveal the existence of the excess-insurance policy. Lauriello sought to be appointed as the class representative and to have class counsel appointed. Alternatively, Lauriello sought to have the trial court relieve the class members in the MedPartners securities litigation from the final judgment entered in that action or to have his fraud claims deemed an "independent action . . . for fraud upon the court" under Rule 60(b), Ala. R. Civ. P.
On January 15, 2004, Caremark and the insurers moved to dismiss the complaint, asserting among other things, the statute of limitations, the doctrines of release and res judicata, and failure to state a claim upon which relief could be granted. Caremark and the insurers also argued that, if the trial court did not dismiss Lauriello's claims, the trial court was obligated by § 6-5-641, Ala. Code 1975, to conduct a rigorous analysis of the new claims asserted on behalf of Lauriello and all others similarly situated. Caremark and the insurers also asserted that Lauriello and his counsel had a conflict of interest with the purported class members and that they could not properly serve as the class representative and class counsel.
In January 2005, the trial court issued an order, which it designated as an "Order on Class Certification." In that order, the trial court concluded that it need not certify a new class action. The trial court noted that, in the MedPartners securities litigation, all parties had agreed that the trial court would retain "exclusive, continuing jurisdiction over all parties and the Settlement Class Members for all matters relating to the Settlement." The trial court concluded that its continuing jurisdiction encompassed these newly alleged fraud claims because, it reasoned, the fraud was perpetrated upon the class members in the MedPartners securities litigation and upon the trial court in order to facilitate the settlement of the claims in the MedPartners securities litigation. The trial court noted that it had been unable to perform its obligations to the settlement class because of the misrepresentations made to it regarding MedPartners' insurance coverage.
The trial court stated: "To force these wronged persons, composing the 1999 Class, to go through another slow and expensive re-certification procedure merely to assert rights they have already fought for and won, and were then wrongfully denied by the inaccurate settlement agreement, cannot in good conscience be allowed by this Court." The trial court stated that this action raised issues relevant to the previous settlement and, therefore, that a new class certification was unnecessary. Because a new class was not being certified, the trial court concluded that the mandatory "rigorous analysis" of § 6-5-641, Ala. Code 1975, was not required. The trial court left open the issue whether Lauriello and his counsel were appropriate representatives for the plaintiff class.
Caremark and the insurers appeal that ruling, arguing that in order to address Lauriello's claims, the trial court must certify a new class and must conduct the rigorous analysis required by § 6-5-641, Ala. Code 1975. Lauriello filed a motion to dismiss the appeal as improperly filed. Caremark and the insurers then filed a petition for a writ of mandamus, as an alternative means of appellate review.
 Case no. 1040977 The Intervention Issue
On November 5, 2003, shortly after Lauriello filed his complaint, McArthur filed a complaint in the Jefferson Circuit Court against Caremark and the insurers, as well *Page 1123 
as the lawyers and law firms involved in the settlement of the MedPartners securities litigation. That action is hereinafter referred to as the "McArthur action." The plaintiffs in the McArthur action allege that they were members of the settling class in the MedPartners securities litigation.[3] Like Lauriello in his newly asserted claims, McArthur alleged misrepresentation and suppression against Caremark and the insurers. In addition to the mis-representation and suppression claims, McArthur asserted breach-of-fiduciary-duty claims against the lawyers and the law firms involved in the settlement of the MedPartners securities litigation.
The McArthur action was then stayed, because of the then pending and substantially similar action filed by Lauriello. After the Lauriello court issued its January 31, 2005, "Order on Class Certification," concluding that no new class certification was necessary, McArthur filed a motion to intervene in Lauriello's action. On March 10, 2005, the trial court in Lauriello's action denied this motion, concluding that it was untimely. McArthur appeals.
 Case no. 1040908 and Case no. 1040821 Review of the Trial Court's Order Allowing New Class Claims to Proceed
In Regions Bank v. Lee, 905 So.2d 765 (Ala. 2004), this Court stated:
 "We apply `"an abuse-of-discretion standard of review to a trial court's class-certification order, but we will review de novo the question whether the trial court applied the correct legal standard in reaching its decision to certify a class."' Alfa Life Ins. Corp. v. Hughes, 861 So.2d 1088, 1094 (Ala. 2003) (quoting Smart Prof I Photocopy Corp. v. Childers-Sims, 850 So.2d 1245, 1248 (Ala. 2002)). The party seeking certification has the burden of proving that it is entitled to class certification. § 6-5-641(e), Ala. Code 1975."
905 So.2d at 769-70.
Additionally, as this Court has recognized:
 "Mandamus is an extraordinary remedy requiring a showing that there is: `(1) a clear legal right in the petitioner to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) properly invoked jurisdiction of the court.' Ex parte Edgar, 543 So.2d 682, 684
(Ala. 1989); Ex parte Alfab, Inc., 586 So.2d 889, 891 (Ala. 1991); Ex parte Johnson, 638 So.2d 772, 773 (Ala. 1994)."
Ex parte Compass Bank, 686 So.2d 1135, 1137 (Ala. 1996).
The trial court purported to exercise "continuing jurisdiction" over Caremark and the insurers in this action by relying on language contained in the settlement agreement entered into by the parties to the MedPartners securities litigation. Because of this "continuing jurisdiction," the trial court allowed Lauriello's claims of fraud, asserted on behalf of himself and others similarly situated, to go forward without the benefit of the rigorous analysis required by § 6-5-641, Ala. Code 1975.
By assuming jurisdiction over Lauriello's fraud claims and concluding that no new class-certification analysis was required, the trial court must have concluded either (1) that the settlement negotiations from the MedPartners securities litigation should be and could be reopened, or, alternatively, (2) that because the actions challenged *Page 1124 
by Lauriello purportedly occurred in connection with the settlement of a class action, the trial court had the authority to address those new claims without the necessity of another Rule 23, Ala. R. Civ. P., analysis. For the following reasons, we disagree with either conclusion, and we direct the trial court to vacate its January 31, 2005, order.
The only mechanism available to Lauriello to revive or reopen the claims made the basis of the settlement agreement entered into between the parties to the MedPartners securities litigation — claims that have been settled and on which a final judgment has been entered — is the mechanism provided in Rule 60(b), Ala. R. Civ. P. Rule 60(b) provides:
 "On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment."
Although Lauriello alleges that fraud occurred in connection with the settlement, a motion to set aside a final judgment because of fraud in the proceedings must be filed within four months of the date of the final judgment. See Rule 60(b), Ala. R. Civ. P. ("The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than four (4) months after the judgment, order, or proceeding was entered or taken."), and Committee Comments on 1973 Adoption of Rule 60. In this case, the final judgment in the MedPartners securities litigation was entered some four years before Lauriello filed this action. Therefore, the option provided to Lauriello under Rule 60(b)(3) to challenge the settlement based on the alleged fraud is, at this date, foreclosed.
Additionally, because Lauriello's challenge to the finality of the settlement agreement is addressed by Rule 60(b)(3), Rule 60(b)(6), Ala. R. Civ. P., known as the "catch-all" provision, is inapplicable. See Committee Comments on 1973 Adoption of Rule 60, Ala. R. Civ. P.: "[I]t is now settled that the `other' provision of Rule 60(b)(6) is mutually exclusive with the five specific grounds for attack previously listed." This Court has stated:
 "Clause (6), however, is mutually exclusive of the specific grounds of clauses (1) through (5), and a party may not obtain relief under clause (6) if it would have been available under clauses (1) through (5). Because clause (6) operates exclusively of the specific grounds listed in clauses (1) through (5), this Court has stated that a party may not escape the four-month limitation applicable to clauses (1) through (3) merely by characterizing the motion as seeking relief under clause (6)."
R.E. Grills, Inc. v. Davison, 641 So.2d 225, 229
(Ala. 1994) (citations omitted).
However, Rule 60(b), Ala. R. Civ. P., also contemplates that a party may seek to reopen a final judgment in the face of an allegation that the judgment was the result of "fraud upon the court." That rule provides, in part: *Page 1125 
 "This rule does not limit the power of a court to entertain an independent action within a reasonable time and not to exceed three (3) years after the entry of the judgment (or such additional time as is given by § 6-2-3 and § 6-2-8, Code of Alabama 1975) to relieve a party from a judgment, order, or proceeding, or to set aside a judgment for fraud upon the court."
Because Lauriello alleges that Caremark and the insurers misrepresented MedPartners' financial status and insurance coverage to the trial court as well as to the plaintiff class, the settlement agreement could potentially be attacked for "fraud upon the court."
However, Lauriello's 2003 complaint includes defendants that were not parties to the MedPartners securities litigation. Lauriello's 2003 complaint also includes claims of fraud and misrepresentation that do not relate to the allegations made the basis of the MedPartners securities litigation. The inclusion of additional defendants and newly asserted claims indicates that, by the filing of the 2003 complaint, Lauriello is not seeking merely to reopen the settlement agreement to renegotiate the amount of damages payable to the class in the MedPartners securities litigation.
Indeed, considering the complaint as now drafted, we can find no basis on which to reopen the settlement proceedings, or to revive the claims asserted, in the MedPartners securities litigation. As the complaint is now drafted, Lauriello's only option is to proceed with his misrepresentation and suppression claims as a new action. Lauriello asserts those claims on behalf of a class of all others similarly situated to himself with regard to these newly asserted claims. Despite the existence of the new claims, there can be no dispute that the class of persons similarly situated to Lauriello with regard to these newly asserted claims is identical to the class certified in the MedPartners securities litigation.
However, more than a discrete and identifiable group of individuals is required to properly certify claims for class treatment. In order to properly certify a class action, the "rigorous analysis" contemplated by Rule 23, Ala. R. Civ. P., and by § 6-5-641, Ala. Code 1975, must be met. In meeting this level of scrutiny, the members of the purported class must be analyzed in terms of their relationship to the particular claims and defenses to be asserted in the class action.
In Bill Heard Chevrolet Co. v. Thomas, 819 So.2d 34
(Ala. 2001) ("Heard II"), this Court addressed a trial court's failure to conduct the rigorous analysis required by Rule 23, Ala. R. Civ. P., and § 6-5-641, Ala. Code 1975. InHeard II, we reversed the trial court's order certifying the purported class for two reasons. First, we concluded that the order had been entered without benefit of an evidentiary hearing and without an opportunity for the defendants to oppose class certification. We also concluded that the class-certification order failed to meet the rigorous-analysis standard imposed by Rule 23, Ala. R. Civ. P., and § 6-5-641, Ala. Code 1975:
 "The . . . conditional class certification order fail[ed] to meet the rigorous-analysis requirements of § 6-5-641 and Rule 23 for the additional reason that the order fail[ed] to identify the elements of the four claims being certified for class treatment and fail[ed] to discuss in a cogent manner how those elements bear upon the criteria set forth in Rule 23.
 "`[The trial] court must go behind the pleadings in making a certification determination, "as a court must understand the claims, defenses, relevant facts, and applicable substantive law *Page 1126 
in order to make a meaningful determination of the certification issues."'
 "Mann v. GTE Mobilnet of Birmingham, Inc., 730 So.2d 150, 152 (Ala. 1999), quoting Castano v. American Tobacco Co., 84 F.3d 734, 744 (5th Cir.1996). See also Ex parte Green Tree Fin. Corp., 723 So.2d 6, 9 (Ala. 1998) ('In determining whether the questions of law or fact common to the class members predominate over those questions that affect only individual class members, the court must initially identify the substantive law applicable to the case and identify the proof that will be necessary to establish the claim.'). The mandate to identify the `substantive law applicable to the case' requires more than a simple statement of which state's law governs; the trial court is required to identify the elements of the claims to be certified and to discuss, in the context of the class-certification criteria, the proof the plaintiffs must present to establish each of those elements. It is only by specifically discussing the elements of each claim in the context of the Rule 23 criteria that the trial court may determine whether the plaintiffs can establish the Rule 23(a) and 23(b) elements of class certification."
819 So.2d at 41-42. Thus, the claims of the purported class members as well as the purported class members themselves must be analyzed before an action may proceed as a class action.
In the January 31, 2005, order, the trial court obviously recognized that the members of the plaintiff class, as certified in the MedPartners securities litigation, were similarly situated to Lauriello with regard to the settlement agreement entered into by the parties to the MedPartners securities litigation. However, the trial court did not consider the elements of Lauriello's new claims, the potential defenses of Caremark and the insurers, the relevant facts, or the applicable law. Lauriello's claims of misrepresentation and suppression have not been analyzed by the trial court or any other court to determine whether they are appropriate for class treatment. Because Lauriello's claims of misrepresentation and suppression have not been analyzed for purposes of class certification as required by § 6-5-641, Ala. Code 1975, the January 31, 2005, order failed to comply with the statutory mandate.
For these reasons, we conclude that Caremark and the insurers are entitled to the relief they seek; the trial court has a duty to comply with § 6-5-641, Ala. Code 1975, and has failed to do so; and Caremark and the insurers have no other adequate remedy. We, therefore, issue the writ and direct the trial court to vacate its January 31, 2005, order. Because it appears from Lauriello's complaint that he intends to assert his misrepresentation and suppression claims — claims that have not heretofore been analyzed for class treatment — on behalf of a class and against entities that were not parties to the MedPartners securities litigation, we order the trial court to vacate its "Order on Class Certification" and direct the trial court to conduct a rigorous analysis of those claims, pursuant to Rule 23, Ala. R. Civ. P., and § 6-5-641, Ala. Code 1975.[4] We express no opinion on the merits of those claims or on the feasibility of certifying them for class treatment. *Page 1127 
 Case no. 1040977 McArthur's Motion to Intervene
After the trial court entered its "Order on Class Certification," McArthur filed a motion to intervene in theLauriello action for the stated purposes of
 "(a) challenging the adequacy of class counsel and the class representative; (b) participating in all discovery relating to the adequacy of class counsel and the class representative; (c) seeking appointment and designation of Frank G. McArthur, Bill Greene and Virginia Greene as class representatives in this action; (d) seeking appointment and designation of the undersigned attorneys as class counsel for the certified class herein; (e) joining as defendants in this action the following parties who are presently named as defendants in Frank G. McArthur, et al. v. Caremark RX, Inc., et al. . . ."
The trial court denied that motion as untimely filed. The trial court observed that as early as February 2004 McArthur knew of his conflict claim because he had already asserted the conflict issue in the McArthur action. However, the trial court observed, McArthur did not bring the alleged conflict of interest to the attention of the court in Lauriello's action until after that court had already expended considerable time and effort to reach its conclusions and to issue its "Order on Class Certification." In denying McArthur's motion to intervene, the trial court stated:
 "It is a basic principle of jurisprudence that a court may only rule on what is presented before it. In contemplating the Order on Class Certification, this Court was presented with Lauriello's motion and [Caremark and the insurers'] opposition. It is imperative to note that out of a class of numerous individuals, no one came forth with any argument whatsoever as to adequacy of class representative and counsel, save [Caremark and the insurers] in this action. In issuing the Order on Class Certification of January 31, 2005, it was contemplated that the Lauriello Plaintiff and the Lauriello Defendants would have the opportunity for discovery regarding, what for all indications seemed to be, a dispute concerning [Lauriello] and [Caremark and the insurers] in this action. It was not until February 8, 2005, eight days after this Court's Order on Class Certification was issued, that the McArthur plaintiffs finally chose to act by filing their Motion to Intervene, Objection to the Order on Class Certification, and Motion for Sua Sponte Removal of Class Representative and Class Counsel."
The trial court concluded that McArthur had "slept on his rights," making his motion to intervene untimely.
 "`The decision to grant or to deny a motion to intervene is within the sound discretion of the trial court, and this Court will not disturb that ruling absent an abuse of discretion. In its exercise of discretion, the trial court must determine whether the potential intervenor has demonstrated: (1) that its motion is timely; (2) that it has a sufficient interest relating to the property or transaction; (3) that its ability to protect its interest may, as a practical matter, be impaired or impeded; and (4) that its interest is not adequately represented.'"
Richards v. Izzi, 819 So.2d 25, 33 (Ala. 2001) (quoting City of Dora v. Beavers, 692 So.2d 808, 810
(Ala. 1997), citing in turn Valley Forge Ins. Co. v.Alexander, 640 So.2d 925, 927 (Ala. 1994), and Rule 24(a), Ala. R. Civ. P.). "A `practical' rather than a `technical' approach measures the doctrine of intervention as a matter of right pursuant to Rule 24(a)(2)[, Ala. R. Civ. *Page 1128 
P.]." Long v. City of Hoover, 844 So.2d 1273, 1281
(Ala.Civ.App. 2002).
As recognized above, McArthur asserts that he was a member of the class of plaintiffs certified in the MedPartners securities litigation. If he was a settling party in that action he is a purported class member in Lauriello's action. If he is a member of the class to be certified in Lauriello's action, he has a direct interest in the fraud and suppression claims asserted in that action. However, McArthur asserts that Lauriello and his counsel have a conflict of interest and are not appropriate parties to represent the class, which includes McArthur.
If McArthur is not allowed to intervene in Lauriello's action, the only parties, as the action is currently situated, available to protect his interests are Caremark, the insurers, and Lauriello. However, Caremark and the insurers are alleged to have perpetuated a fraud upon the class members, including McArthur. Lauriello and his counsel are alleged to have, at a minimum, acted negligently in not discovering the fraud. If the claims against Caremark and the insurers go forward in the manner the case is currently postured, McArthur's ability to protect his interest may be impaired or impeded.
This brings us to the final consideration of McArthur's motion to intervene — the timeliness of the motion.
 "[I]t has long been held that the determination of timeliness [of a motion to intervene] is a matter committed to the sound discretion of the trial court. See Strousse v. Strousse, 56 Ala.App. 436, 322 So.2d 726 (1975). See also McDonald v. E.J. Lavino Co., 430 F.2d 1065, 1072 (5th Cir.1970). Because the pressure to allow intervention `of right' under Rule 24(a)[, Ala. R. Civ. P.,] is by its very nature more compelling than is permissive intervention, most courts tend to require less rigidity in evaluation of timeliness under Rule 24(a). See Diaz v. Southern Drilling Corp., 427 F.2d 1118 (5th Cir.), cert. denied, 400 U.S. 878, 91 S.Ct. 118, 27 L.Ed.2d 115 (1970), rehearing denied, 400 U.S. 1025, 91 S.Ct. 580, 27 L.Ed.2d 638 (1971). See generally, [C. Wright, A. Miller 
M. Kane, Federal Practice Procedure] § 1916 [(2d ed.1986)]. As expressed in McDonald, 430 F.2d at 1073: `Since in situations where intervention is as of right, the would-be intervenor may be seriously harmed if he is not permitted to intervene, courts should be reluctant to dismiss such a request for intervention as untimely, even though they might deny the request if the intervention were merely permissive.'
 "Notwithstanding these principles, however, motions for intervention after judgment have not met with favor in the courts. See, generally, Wright 
Miller, § 1916. As was stated in McDonald, 430 F.2d at 1072: `The rationale which seems to underlie this general principle . . . is the assumption that allowing intervention after judgment will either (1) prejudice the rights of the existing parties to the litigation or (2) substantially interfere with the orderly processes of the court.' However, if neither of these results would occur, the mere fact that judgment has already been entered should not by itself require the denial of an application for intervention. See Wright Miller, § 1916.
 "As explained by the court in McDonald, 430 F.2d at 1074:
 "`"Timeliness" is not a word of exactitude or of precisely measurable dimensions. The requirement of timeliness must have accommodating flexibility toward both the court and the litigants if it is to be successfully employed to regulate intervention in *Page 1129 
the interest of justice. The rule has its permissive aspects, and while we do not dislodge nor denigrate the trial court's discretion in matters of intervention, we must view its exercise in the liberal atmosphere of the Rules of Civil Procedure, which are to be construed "to secure the just, speedy, and inexpensive determination of every action." Rule 1, Fed.R.Civ.P. [As are the Alabama Rules of Civil Procedure. See Rule 1, A.R. Civ. P.] . . . We think it is correct to say that since "the privilege of intervention stems from a desire to protect the rights of unrepresented third parties, it becomes apparent that the timely application requirement under Rule 24 was not intended to punish an intervenor for not acting more promptly but rather was designed to insure that the original parties should not be prejudiced by the intervenor's failure to apply sooner." Note, The Requirement of Timeliness Under Rule 24 of the Federal Rules of Civil Procedure, 37 Va. L.Rev. 863, 867 (1951). Accordingly, it has been the traditional attitude of the federal courts to allow intervention "where no one would be hurt and greater justice would be attained." Id. at 868.'"
Randolph County v. Thompson, 502 So.2d 357, 364-65
(Ala. 1987).
We agree with the trial court that McArthur's motion to intervene could have been filed sooner. However, timeliness of the motion to intervene must be balanced against the need to protect the rights of class members other than the named representative. McArthur's interests, as well as the interests of the other purported class members, may not be adequately protected if McArthur is not allowed to intervene.
Further, in light of the facts that the trial court has not yet addressed Lauriello's motion to be appointed as class representative, that the trial court has not yet addressed the issue of an alleged conflict of interest between Lauriello and the purported class members, and that we have directed the trial court to conduct a rigorous analysis of Lauriello's misrepresentation and suppression claims, we fail to see how allowing McArthur to intervene at this stage of the proceedings would prejudice the existing parties to the proceedings. We also fail to see how allowing McArthur's intervention motion at this time could interfere with the orderly processes of the trial court.
Because none of the parties will be prejudiced by the intervention, because justice may not be attained if intervention is not allowed, and because McArthur's intervention at this stage of the litigation will not prejudice the existing parties or interfere with the orderly processes of the trial court, we conclude that the trial court exceeded its discretion in denying McArthur's motion to intervene. We reverse that ruling and remand this cause to the trial court with directions to grant McArthur's motion. We express no opinion on McArthur's allegation of a conflict of interest between Lauriello and the other purported class members.
1040821 — APPLICATION OVERRULED; OPINION OF AUGUST 18, 2006, WITHDRAWN; OPINION SUBSTITUTED; PETITION GRANTED; WRIT ISSUED.
NABERS, C.J., and SEE, LYONS, HARWOOD, SMITH, BOLIN, and PARKER, JJ., concur.
WOODALL, J., concurs in the result.
1040908 — APPLICATION OVERRULED; OPINION OF AUGUST 18, *Page 1130 
2006, WITHDRAWN; OPINION SUBSTITUTED; APPEAL DISMISSED.
1040977 — APPLICATION OVERRULED; OPINION OF AUGUST 18, 2006, WITHDRAWN; OPINION SUBSTITUTED; REVERSED AND REMANDED WITH INSTRUCTIONS.
NABERS, C.J., and SEE, LYONS, HARWOOD, WOODALL, SMITH, BOLIN, and PARKER, JJ., concur.
WOODALL, Justice (concurring in case no. 1040908 and case no. 1040977; concurring in the result in case no. 1040821).
Insofar as the main opinion grants the petition for the writ of mandamus in case no. 1040821, I concur in the result only. I concur fully in the remainder of the opinion.
[1] Caremark and the insurers raise identical issues in the appeal (case no. 1040908) and in the petition for a writ of mandamus (case no. 1040821). The issues were fully briefed in the appeal. For that reason, in lieu of ordering answer and briefs in case no. 1040821, we accepted the briefs filed by the parties in case no. 1040908 as sufficient for our consideration of Caremark and the insurers' petition for a writ of mandamus.
[2] The complaint alleges that Caremark is a successor corporation to MedPartners. For purposes of this opinion, we treat Caremark as a full successor to MedPartners' assets and liabilities.
[3] A settling party in the MedPartners securities litigation would be a purported class member in Lauriello's action.
[4] However, we point out that Caremark is judicially estopped to now challenge the existence of a validly certified class, as recognized in the MedPartners securities litigation. The propriety of that certification has been resolved and is not subject to debate. This Court's silence as to the applicability of the doctrine of judicial estoppel to any other party is not intended to foreclose consideration of such a claim, if appropriate, by the trial court.