STUART, Justice.
In June 2000, the Franklin Circuit Court (“the trial court”) entered a final judgment approving a settlement, agreement in. Taff v. Caremark, Inc., a class-action lawsuit against the corporate predecessor of the petitioner, Caremark Rx, LLC (“Care-mark). Approximately 16 years later, in July 2016, Taff class - counsel moved the trial court to enter an order requiring Caremark .to produce for them certain information -regarding the members of the Taff class so that Taff class counsel could notify those members of a proposed settlement in a separate class-action lawsuit pending against Caremark in the Jefferson Circuit Court, Johnson v. Caremark Rx, LLC, in which some of the members of the Taff class might be able to file claims. The trial- court ultimately granted Taff class counsel’s request and ordered Caremark to produce the requested information. Caremark now petitions this Court for a writ of mandamus directing the trial court to vacate that order. We grant the petition and issue the writ.
I.
On September 15, 1997, MedPartners, Inc., ■ a' physician-practice-management/pharmacy-bénefíts-management corporation that'was the predecessor in interest to Caremark, Inc., .and Caremark, hegan issuing to investors a type of convertible security known as threshold-appreciation-price ■ securities, or TAPS. TAPS holders were entitled to receive interest payments through the final settlement date, August 31, 2000, at which time they would receive a yield-enhancement payment and all their TAPS would be converted into shares of MedPartners common stock. The' funds received by MedPartners in exchange for the TAPS were to be held in escrow until the final settlement date, when they would be released to MedPartners; however, if certain “termination events” indicating that MedPartners had become financially distressed occurred before August 31, 2000, TAPS holders were entitled to an immediate payment.
In March 1999, a California state agency appointed a conservator over a MedPart-ners subsidiary operating in California; that conservator subsequently initiated bankruptcy proceedings on behalf of the subsidiary. In March 2000, certain TAPS holders initiated the Taff action in Franklin County to resolve the issue whether the bankruptcy of the California subsidiary constituted' a termination event" entitling them to an immediate payment. A settlement was quickly reached and, on June 9,' 2000, the trial court entered a final judgment approving the -terms of that settlement and further stating, as relates to-the case presently before this Court:
“The court hereby reserves and maintains continuing' jurisdiction over all matters relating to the settlement agreement or the consummation of the settlement, the validity of the settlement, the construction and enforcement of the settlement and any orders entered pursuant thereto; and the entry arid enforcement of this final judgment, including, in the event of reversal, vacation, or modification, jurisdiction to revoke this order and final judgment in its -entirety and to *753 reinstate all claims dismissed or released; to discipline class members, parties or attorneys who do not comply with the terms of this final judgment; to provide an award of attorneys fees; to tax court costs; and to all other matters pertaining to the settlement agreement, its implementation, and enforcement.”
There is no evidence in the record indicating, nor has there been any allegation, that the parties in Taff did not abide by the terms of the June 2000 final judgment.
During this same period, MedPartners was embroiled in other litigation. In 1998, approximately 21 separate lawsuits were filed against MedPartners in various state and federal courts alleging that 'MedPart-ners had, in connection with a planned merger with Phycor Inc., made false and misleading statements to, both the public and the Securities and Exchange Commission concerning its financial condition and anticipated future performance. Some of those lawsuits asserted claims on behalf of TAPS holders based on their general status as holders of MedPartners-issued securities; however, none of those lawsuits was specifically related to TAPS or implicated the issues subsequently addressed in the Taff action. Those various cases were ultimately consolidated in the Jefferson Circuit Court and, in 1999, a global settlement was reached. This Court subsequently described the details of that settlement— along with a subsequent attempt to reopen the settlement based on allegations that MedPartners and its insurer had fraudulently suppressed information regarding MedPartners’ insurance coverage—in CVS Caremark Corp. v. Lauriello, 175 So.3d 596, 598-99 (Ala. 2014):
“Based on the alleged financial distress and limited insurance resources of Med-Partners, the 1998 litigation was concluded in 1999 by means of a negotiated ‘global settlement,’ pursuant to which the claims of all class members- were settled for $56 million—an amount that, according to the representations of Med-Partners, purportedly .exhausted its available insurance coverage. Purportedly based on representations of counsel that MedPartners lacked the financial means to pay any judgment in excess, of the negotiated settlement and that the settlement amount was thus the best potential recovery for' the class, the trial court, after a hearing, approved the settlement and entered a judgment in accordance therewith.
“Thereafter, however, MedPartners, now Caremark, allegedly disclosed, in unrelated litigation, that it had actually obtained—and thus had available during the 1998 litigation—an excess-insurance policy providing alleged ‘unlimited coverage’ with regard to its potential-damages exposure in the 1998 litigation—the existence of which it had purportedly concealed in negotiating the class settlement. As a result, in 2003, [a member of the class that was subject to the 1999 settlement] ... again sued .Caremark and the insurers' in the Jefferson Circuit Court, pursuant to a class-action complaint alleging misrepresentation and suppression—specifically, that Care-mark and the insurers'had misrepresented the amount of insurance coverage available’to settle the 1998 litigation and that they also had suppressed the existence of the purportedly unlimited excess policy ....”
(Footnotes omitted.) For the next several years, the involved parties—class members in the Jefferson County action, Care-mark, its insurer, and various attorneys who had at one time or were now representing class members—litigated various matters not directly related to the ultimate issue whether the settlement that ended the 1998 litigation had been procured by fraud. That litigation resulted in multiple *754 appeals to this Court. See Lauriello; McArthur v. Yearout & Traylor, P.C., 34 So.3d 737 (Ala. 2008) (table); and Ex parte Caremark RX, Inc., 956 So.2d 1117 (Ala. 2006).
On August 15, 2012, the Jefferson Circuit Court certified the fraud claims asserted against MedPartners and its insurer based on the settlement of the 1998 litigation as being appropriate for class-action treatment, and it also defined the applicable class to include, among other holders of MedPartners securities, “[a]ll persons who ... purchased MedPartners [TAPS] in the September 15,1997, offering or thereafter through January 7, 1998.” This Court affirmed the August 15, 2012, order of the Jefferson Circuit Court in Lauriello, 175 So.3d at 614, and the Jefferson Circuit Court thereafter ordered that notice of the class action be provided to all potential class members. Over 99,000 notices were subsequently mailed out to parties previously identified as owners of record or beneficial owners of MedPartners securities, as well as to over 250 brokerages, custodial banks, and other financial institutions that may have held MedPart-ners securities on behalf of others. Notice was also published in the The Wall Street Journal. No objections were made claiming that those methods of notice were inadequate.
The Jefferson County action was ultimately -restyled as Johnson v. Caremark Rx, LLC, and, on June 1, 2016, the Jefferson Circuit Court gave preliminary approval to a $310 million settlement agreement. Pursuant to the terms of that settlement, class members had to affirmatively file a claim to receive any portion of the settlement fund. In giving preliminary approval to the settlement, the Jefferson Circuit Court also approved the parties’ plan for publishing, mailing, and distributing settlement notices and claim forms to potential claimants, ordered that any objections to the proposed settlement be filed by July 22, 2016, scheduled a final fairness hearing for August 8, 2016, and set a deadline of September 30,. 2016, for class members to file claim forms.
At some point after the Jefferson Circuit Court entered its June 1, 2016, order in Johnson, Taff class counsel decided to contact the members of the .Taff class to notify them that they might be able to receive funds from the settlement of the Johnson case if they filed a timely claim. However, Taff class counsel did not have a complete list identifying the members of the Taff class with contact information and details of their securities holdings; accordingly, on July 22, 2016, Taff class counsel moved the trial court, pursuant to Rule 60(b)(6), Ala. R. Civ. P., to reopen the Taff action—which appears to have seen no activity since it was settled in June 2000— and to order Caremark to provide Taff class counsel with information regarding the members of the Taff class. That motion stated, in relevant part:
“Plaintiff and class counsel, seek to assist class members in participating in a related class action case pending in Jefferson County, Alabama, Johnson v. Caremark Rx, LLC, CV-03-6630-PJB. As the class representative and class counsel, movants have an obligation to zealously represent the members of this certified and settled class. In order to do so, however, class counsel needs information concerning the members of the class and each of them purchases and sales of MedPartners-related securities, including, without limitation, purchases and sales of MedPartners common stock, purchases and sales of options of MedPartners common stock, and purchases and ' sales of MedPartners [TAPS]. Plaintiff and class counsel seek this relief because the proposed settle *755 ment reached [in the] Jefferson County action, if approved, will provide additional compensation to all of the class members in this class, all of whom were purchasers or sellers of MedPartners TAPS securities, the subject matter of this action. Members of the certified class in this case are also members of the preliminarily-certified class in the Jefferson County action. The proposed Jefferson County settlement is a claims-made settlement, and plaintiff and class counsel have an obligation to make sure that the class members in this case have a full and fair opportunity to participate in and receive benefits from that settlement.
[[Image here]]
“Plaintiff and class counsel were never provided with the list used to generate the class notice in this case. ■ MedPart-ners, either itself or through the claims administrator that MedPartners hired to administer the settlement, is in possession of this information as well as additional information about the class members.
“Accordingly, in order for plaintiff and class counsel to fulfill their duties to zealously represent the class, movants request the court to order MedPartners, either itself or through its claims administrator, to provide the following as to each class member: full name; mailing address; email address; home, work, and mobile telephone numbers; trades and holdings in MedPartners common stock, stock options, and TAPS.”
Caremark opposed Taff class counsel’s' request and filed a response, arguing, among other things, that Taff class counsel’s invocation of and reliance upon Rule 60(b)(6), Ala. R. Civ. P., was inappropriate and that .the trial court lacked jurisdiction to grant the requested relief. Caremark also alleged that it had conducted preliminary searches and did not even have most of the information being requested, supporting this assertion with the affidavit of a corporate officer indicating that only three documents relevant to the request of Taff class counsel had been identified, two of which had already been filed with the Jefferson Circuit Court in Johnson and were thus presumably publicly available. The third document was described as “a listing of names and addresses for TAPS holders that pre-dates the Master List contained in the court file in this case.”
The trial court thereafter conducted a hearing on Taff class counsel’s motion and requested proposed orders from the parties. In their .proposed order, Taff class counsel withdrew their request for relief pursuant to Rule 60(b)(6) and instead requested that the trial court order Care-mark to provide the requested information on the basis that the court had, in its June 2000 final judgment approving the Taff settlement, stated that it was “reserving] and maintain[ing] continuing jurisdiction over all matters relating to the settlement agreement.” On August 1, 2016, the trial court denied Taff class counsel’s request for Rule 60(b)(6) relief but nevertheless granted them the relief they ultimately sought, stating: ■ . ■ . ■
“Upon consideration of [Taff class counsel’s] motion and its premises, and having heard and' considered the written submissions and oral arguments from counsel for the parties, the court hereby denies the motion in its entirety. However, the filings in this case have brought to the court’s attention that the court file does not contain information identifying the class members in this case who are bound by the judgment. The court further notes that according to [Care-mark’s] filings [Caremark]' [has] information in [its] possession that could assist in that identification. Therefore, the *756 court orders under.its retained jurisdiction that [Caremark] file with the court on or before August 31, 2016, alldocu-ments in [its] possession or [to which it has] reasonable access that identify] .class members who received notice, or wh'o- held TAPS, and the number of TAPS or other MedPartners securities held by them.”
The trial court also specifically stated that Caremark was required to produce the list of names and addresses described in the affidavit submitted in conjunction with Caremark’s initial motion opposing the Taff class counsel’s Rule 60(b)(6) motion.
On August 11, 2016, Caremark petitioned this Court for a writ of mandamus directing the trial court to vacate its August 1 order. Caremark thereafter moved this Court to stay the .trial court’s August 1 order and, on August 25, 2016, we granted the motion to stay and ordered Taff class counsel to file an answer responding to Caremark’s petition. Johnson class counsel subsequently moved this Court for permission to file an amicus curiae brief in support- of Caremark • arguing that Taff class counsel was attempting to interfere in their attorney-client relationship with the members of the Johnson class; that motion was ultimately granted as well.
II.
The standard of review applied to a petition seeking the issuance of a writ of mandamus is well settled:
“Mandamus is 'a drastic and extraordinary writ, to be issued only where there is (1) a cteai' legal right in the petitioner to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate .remedy; and (4) properly invoked jurisdiction of the court.”
Ex parte Integon Corp., 672 So.2d 497, 499 (Ala. 1995). In this case, Caremark argues' that we should grant its mandamus petition for two reasons. First, Caremark alleges that the trial court lacked jurisdiction to enter the August 1 order, and, second, Caremark alleges that the ordered relief is unreasonable and excessively burdensome, and that the trial court exceeded its discretion in ordering it. This Court has- previously indicated that both arguments are appropriate subjects for mandamus review. See, e.g., Ex parte Hampton, 189 So.3d 14, 16 (Ala. 2015) (“The narrow exceptions when mandamus review is available include when the petitioner challenges the subject-matter jurisdiction, of the trial court ...,.”), and Ex parte Loube Consulting Int’l, Inc., 45 So.3d 741, 748 (Ala. 2010) (recognizing that a -party may seek mandamus review of a trial court’s order requiring it to turn information over to the opposing party if the production of that information would be “unduly burdensome and costly”).[1] We further note that Caremark’s mandamus petition is timely and that it complies with the requirements of Rule 21, Ala, R. App. P. Accordingly, the remaining issue before this Court is whether Caremark has a clear legal right to an order directing the trial , court to vacate its August 1 order.
III.
We first consider Caremark’s argument that the trial court lacked jurisdic *757 tion to enter the August 1 order requiring Caremark to produce certain information regarding the members, of the Taff class 16 years after the trial court entered its Anal judgment in the case. The June 2000 final judgment entered by the trial court approved the parties’ settlement and resolved all the issues and claims that had been raised in the Taff case. For all that appears, no postjudgment motions invoking Rule 59, Ala. R. Civ. P, were filed after the judgment was entered. If no Rule 59 motion is filed -after a judgment is entered, the trial court that entered the judgment generally loses jurisdiction to amend the judgment 30 days after the judgment is entered.[2] Pierce v. American Gen. Fin., Inc., 991 So.2d-21-2, 215 (Ala. 2008). However, a trial court nevertheless continues to hold “residual jurisdiction” even after that 30-day period expires such that it can still take any steps that are necessary to enforce its judgment. See, e.g., George v. Sims, 888 So.2d 1224, 1227 (Ala. 2004) (explaining that “a trial court has ‘residual jurisdiction 'or authority to take certain action necessary to enforce or interpret a final judgment’ ”) (quoting Helms v. Helms’ Kennels, Inc., 646 So.2d 1343, 1347 (Ala. 1994)). The trial ■ court specifically noted in the June 2000 judgment that it would continue to retain this residual jurisdiction when it stated that “[t]he court hereby reserves and maintains continuing jurisdiction over all matters relating to the settlement agreement or the consummation of the settlement.” The question thus becomes whether it was .within the trial court’s residual jurisdiction to issue the August 1 order requiring Caremark to produce the requested information.. For the reasons that follow, we conclude that it was not.
Athough it is true that the trial court’s statement of retained jurisdiction might be1 read in a manner that would allow the trial court to require Caremark to now disclose the information sought by Taff class counsel—inasmuch as the identities of the Taff class members is in some way “related” to the settlement agreement—the trial court’s residual jurisdiction cannot be extended that far. A court cannot broaden by mere declaration the residual jurisdiction it necessarily holds to allow it to interpret or enforce its judgments. In Schramm v. Spottswood, 109 So.3d 154 (Ala. 2012); this Court confronted a similar issue when the cross-appellants argued that the trial court, could revisit a judgment entered-in a boundary-line dispute finalized almost five years earlier. Specifically, they argued that their approximately five-year-late motion “was nevertheless timely and appropriate because the trial court stated in [its final judgment], that it.would retain jurisdiction oyer the case to determine any ‘subsequent issues’ that ¡ arose regarding the boundary lines.” 109 So.3d at 162. Notwithstanding the court’s broad claim of residual,jurisdiction, we.rejected the cross-appellant’s argument, recognizing that, the. final judgment previously entered was, in fact, final, and that,the trial court had no jurisdiction to revisit the judgment, regardless of any claim to retained jurisdiction over the issue the cross-appellants sought to raise'. Id.
The Missouri Court of Appeals’ analysis of this issue is also instructive. In State ex rel. Abdullah v. Roldan, 207 S.W.3d 642 *758 (Mo. Ct. App. 2006), that court considered an argument that the trial court that had presided over the settlement of a class-action lawsuit had exclusive jurisdiction to decide a subsequent dispute between class counsel and other attorneys regarding the payment of a referral fee:
“Class Counsel essentially argues that Paragraph 16 of the [October 4, 2005] Judgment allows the [trial court] to retain jurisdiction over this attorney fee dispute. Paragraph 16, in relevant part provides:
“ ‘Without affecting the finality of this Judgment in any way, this Court hereby retains continuing jurisdiction over ... (b) further proceedings, if necessary, on applications for attorneys’ fees, expenses, and costs in connection with the Litigation and the Settlement;.... Among other things, this Court retains continuing jurisdiction over the Litigation to enforce Defendants’ obligations under the Agreement ... and [to] pay Plaintiffs’ Counsel and Plaintiffs’ Class Counsel any award of attorneys’ fees and reimbursement of expenses made by the Court .... ’
“Class Counsel cites federal case law in support of this contention. However, it is important to note that ‘Missouri Rule 75.01 has no exact counterpart in the Federal Rules.’ Pirtle [v. Cook], 956 S.W.2d [285,] 242 [ (Mo. 1997) ].
“As previously discussed, under Rule 75.01[, Missouri Supreme Court Rules,] a ‘trial court retains jurisdiction for thirty days following the entry of its judgment to take corrective action.’ Lacher v. Lacher, 785 S,W.2d 78, 80 (Mo. 1990). In the absence of any authorized trial motions, ‘the trial court loses jurisdiction at. the expiration of thirty days.’ Id. As the Missouri Supreme Court has also noted, ‘[w]e know of no lawful method which would authorize the trial court to “hold in abeyance” the judgment which had become final.’ Id. (quoting Camden v. St. Louis Pub. Serv. Co., 239 Mo.App. 1199, 206 S.W.2d 699, 703 (1947)). Class Counsel also does not cite any Missouri precedent supporting the [trial court’s] attempt to retain jurisdiction past the thirty days mandated in Rule 75.01.
“In accord with the Missouri Supreme Court’s holding in Lacher, ‘[t]he trial court’s attempt to retain jurisdiction over this final decree is contrary to Rule 75.01 and is without effect.’ Id. at 81. ‘Where the trial court includes language in a judgment that attempts to improperly expand its jurisdiction, the language of the trial court purporting to allow the court to retain jurisdiction is “without effect” and, as a practical matter, is simply treated as excess language.’ Holifield v. Holifield, 109 S.W.3d 711, 716 (Mo. App. W.D. 2003) (citing T.L.I. v. D.A.I., 810 S.W.2d 551, 554 (Mo. App. E.D. 1991)). Regardless of what the Judgment says in Paragraph 16, the [trial court] lost jurisdiction over the Judgment on November 3, 2005. The language in the Judgment attempting to retain jurisdiction is clearly able to be stricken without affecting the remainder of the Judgment. See T.L.I., 810 S.W.2d at 554.
“Class Counsel also argues that since under Missouri law ‘courts have inherent power to enforce their own judgments,’ the [trial court] had the power to grant the Motion to Enforce. Class Counsel is correct that ‘“[c]ourts have inherent power to enforce their own judgments and should see to it that such judgments are enforced when they are called upon to do so.” ’ Lake Thunderbird Prop. Owners Ass’n, Inc. v. Lake Thunderbird, Inc., 680 S.W.2d 761, 763 (Mo. App. E.D. 1984) (quoting 46 Am. *759 Jur.2d Judgments § 898 (1969)). It is also true that ‘Rule 75.01 serves merely as a bar to the court’s right to alter, modify, or change its judgment, but it does not prevent the court from enforcing its judgment as originally entered.’ Multidata Sys. Int’l Corp. v. Zhu, 107 S.W.3d 334, 339 (Mo. App. E.D. 2003).
“ ‘However, this power has significant limitations.’ SD Invs., Inc, v. Michael-Paul, L.L.C., 157 S.W.3d 782, 786 (Mo. App. W.D. 2005). ‘The trial court’s inherent enforcement power applies to the judgment as originally rendered; the trial court’s power to modify a judgment ceases when the judgment becomes final.’ Mo. Hosp. Ass’n v. Air Conservation Comm’n of State of Mo., 900 S.W.2d 263, 267 (Mo. App. W.D. 1995).
“Just because a pleading is titled as a ‘Motion to Enforce’ does not mean that it is in fact a motion to enforce. Based on the record before ús, it appears that the Defendants in the underlying class action have either already paid the $6 million as required by the Judgment or are in the process of fulfilling the order. Therefore, there is no need for the Judgment as originally rendered to be enforced.
“As the full title of the Motion to Enforce suggests, what this ‘Motion to Enforce’ really is, is a motion to declare and interpret rights and obligations couched in terms of a motion to enforce. In fact, what the Class Counsel asks for in the Motion to Enforce cannot be read to be a request for the Judgment to be enforced. Instead, what Class Counsel is asking for is that the [trial court] modify his original Judgment in order to clarify who the award of attorneys’ fees should be paid to and to make factual and legal determinations that were presented to the [trial court] for the first time. However, as discussed above, the [trial court’s] jurisdiction to modify or clarify the Judgment expired on November 3, 2005. The [trial court] only has the power to enforce the judgment as originally entered. Since based on the record before us there is no need for the Judgment to be enforced against the defendants as originally entered, the [trial court] does not have jurisdiction over this matter.”
207 S.W.3d at 646-47(footnote omitted).
As was the case in Roldan, there is no real dispute here that is directly related to the final judgment entered by the trial court. Indeed, the terms of the settlement the trial court approved in the June 2000 final judgment were fulfilled by the parties, and there is no question regarding whether any specific individual was a class member covered by the settlement. Neither the terms of the June 2000 final judgment, nor the terms of the settlement agreement itself, nor the requirements of Rule 23, Ala. R. Civ. P., which governs class-action lawsuits in Alabama, nor any statute that has been identified by the parties required Caremark or its predecessors to file with the trial court—during the pendency of the class action, upon its settlement, or at any time thereafter—the information now being requested. Taff class counsel could have sought to make MedPartners disclose that information as a condition of settlement; however, they did not do so. Accordingly, there is no basis for the trial court to impose that requirement upon Caremark now and it, in fact, lacks the jurisdiction to do so. The trial court’s August 1 order is not merely interpreting or enforcing its June 2000 final judgment; rather, it essentially seeks to modify or amend that final judgment to impose new obligations upon Caremark, even though the trial court’s jurisdiction to modify or amend the judgment expired 30 *760 days after the June 2000 judgment was entered. Accordingly, the August 1 order is due to be vacated.[3] >
IV.
Caremark, petitions this Court for a writ of mandamus, directing the trial court to vacate its August 1 order requiring Care-mark to disclose certain information regarding the Taff class members to Taff class counsel 16 years after a final judgment was entered in Taff. We grant the petition and issue the writ. The jurisdiction retained by the trial court after, it entered its final judgment in Taff is limited to interpreting or enforcing that final judgment; the trial court could not extend its jurisdiction over any matter somehow related to the June 2000 final judgment in perpetuity by simply declaring it so. See Holifield v. Holifield, 109 S.W.3d 711, 716 (Mo. Ct. App. 2003) (“Where the trial court includes language in a judgment that attempts to improperly expand its jurisdiction, the language of the trial court purporting to allow the court to retain jurisdiction is ‘without effect’ and, as a practical matter, is simply treated as excess language.!’). The August 1 order was effectively a modification of the June 2000 final judgment; however, the trial court lost jurisdiction to amend or modify the June 2000 judgment 30 days after it was entered. Accordingly, the trial-court is hereby directed to vacate the August 1 order, which it was without jurisdiction to enter.
PETITION GRANTED; WRIT ISSUED.
Bolin, 'Shaw, Main, Wise, and Bryan, JJ., concur.
Parker, J., concurs in the result.

.. While Ex parte Loube Consulting and similar cases in which this Court has considered arguments that the production of documents would be overly burdensome and costly typically involve discovery disputes, see, e.g., Ex parte Guaranty Pest Control, Inc., 21 So.3d 1222 (Ala. 2009), and Ex parte Dillard Dep’t Stores, Inc., 879 So.2d 1134 (Ala. 2003), their reasoning is equally applicable in the instant case, where the trial court has ordered the petitioner to find and disclose information 16 years after a final judgment was entered.

. Of course, Rule 60(b), Ala. R. Civ, P„ provides a mechanism by which a trial court can provide- relief beyond that 30-day period in certain extraordinary circumstances not present in this case. See Simmons v. Walker, 194 So.3d 243, 246 (Ala. Civ. App. 2015) ("[R]elief under Rule 60(b) is an extreme remedy that is to be granted only in extraordinary circumstances.”).

. Inasmuch as we have held that Caremark is entitled to the relief it seeks on the basis of its first argument regarding the trial court’s lack of jurisdiction to enter the August 1 order, it is unnecessary to consider Caremark’s other argument that the- relief granted Taff class counsel in that order is unreasonable and places an excessive burden upon Caremark. It is likewise unnecessary to consider the arguments made by Johnson class counsel in their amicus curiae brief.