STUART, Chief Justice.
Stanley D. Lawler; Clete Walker; Georgia Urology, P.A., and several of its member physicians (those physicians are hereinafter referred to collectively with *941 Georgia Urology, P.A., as "the Georgia Urology claimants"; Lawler, Walker, and the Georgia Urology claimants are hereinafter referred to collectively as "the objectors"), filed objections in the Jefferson Circuit Court challenging a $124 million attorney fee awarded by the Jefferson Circuit Court to class counsel as part of the settlement of Johnson v. Caremark Rx, LLC ("the Caremark class action).[1] After the trial court overruled their objections and its judgment approving the settlement became final, the objectors appealed the attorney fee to this Court. We vacate the trial court's order awarding attorney fees and remand the case.
I.
This Court has previously had before it appellate proceedings arising from the Caremark class action on multiple occasions. See, e.g., Ex parte Caremark Rx, LLC, 229 So.3d 751 (Ala. 2017) ; CVS Caremark Corp. v. Lauriello, 175 So.3d 596 (Ala. 2014) ; and Ex parte Caremark RX, Inc., 956 So.2d 1117 (Ala. 2006). Although we have described the basic facts of the case on each of those occasions, we briefly do so again here to provide context to the instant appeals.
Beginning in approximately 1998, MedPartners, Inc., was the subject of dozens of securities-fraud lawsuits alleging that it had made false statements regarding its financial condition and anticipated future performance. Many of those lawsuits were eventually consolidated into a class action in the Jefferson Circuit Court ("the MedPartners class action"), and in 1999 the MedPartners class action was settled for $56 million based on MedPartners' assertions that the negotiated settlement exhausted its available insurance coverage and that it possessed limited other assets it could use to pay a larger award or settlement. Post-settlement, however, it was revealed in unrelated litigation that MedPartners actually held an excess-insurance policy providing unlimited coverage during the period in which the alleged fraud had been committed. In 2003, the Caremark class action was initiated against MedPartners' corporate successor, an entity now known as Caremark Rx, LLC ("Caremark"), and its previous insurer asserting fraud and suppression claims based on the $56 million settlement agreed to in the MedPartners class action.
Little progress was made toward resolution of the Caremark class action over the next several years because disputes concerning class certification, class representatives, and which attorneys would act as class counsel resulted in time-consuming delays and multiple appeals to this Court. Ultimately, however, Caremark and its insurer agreed in May 2016 to settle the claims asserted against them in the Caremark class action for $310 million. The trial court subsequently approved the settlement and awarded class counsel 40% of the settlement fund, or $124 million, as an attorney fee. The primary issue in these appeals is the size of the awarded attorney fee; the objectors argue that it is excessive and amounts to a windfall for class counsel and that they were given insufficient time and information to properly object to the size of the attorney-fee award.
In its June 1, 2016, order giving preliminary approval to the $310 million settlement, the trial court set forth the terms of the proposed settlement and outlined the procedures by which class members could file with Gilardi & Co, LLC, the appointed claims administrator, both proof of claims *942 and any objections to the proposed settlement. The trial court also set forth the following relevant deadlines:
June 17, 2016-notice of the proposed settlement, in the forms approved by the trial court, must be published in the Wall Street Journal and on the official settlement Web site and mailed to all identifiable class members. Class counsel's attorney-fee application must also be posted on the settlement Web site.
July 22, 2016-written objections to any aspect of the proposed settlement, including class counsel's attorney-fee application, must be delivered to Gilardi; any objectors desiring to present oral argument regarding their objections must also deliver notice of that desire to the trial court and counsel for all the parties.
July 29, 2016-class counsel must file and serve its attorney-fee application along with all supporting materials.
August 8, 2016-trial court to conduct a fairness hearing to consider fairness, reasonableness, and adequacy of the proposed settlement.
September 30, 2016-class members must deliver proof of claims to Gilardi.
The trial court also approved the notice form that would be mailed to class members ("the short-form notice") and the more detailed notice that would be posted on the settlement Web site ("the long-form notice").
In accordance with this time line, on or around June 17, 2016, the short-form notice was mailed to identified class members. Under a header stating "Your right to additional information and/or to object," the short-form notice provided:
"A longer and more detailed notice of the settlement, which describes additional terms of the settlement and the procedures applicable to the settlement, is available at www.aig-caremarkclassaction.com. The settlement hearing will be held on August 8, 2016 at 1:30 p.m. [at the Jefferson County Courthouse]. ... Any class member may object to the proposed settlement, the plan of allocation, or the fee and expense application and/or incentive awards. A class member may do so by filing a written objection and/or by appearing at the settlement hearing and showing cause why the court should not approve the proposed settlement, the plan of allocation, or the fee and expense application and/or incentive awards. Additional information regarding objecting to the settlement, including the requirements for submitting valid objections, is available at www.aig-caremarkclassaction.com."
(Emphasis added.) Thus, although the trial court's June 1, 2016, order indicated that a class member objecting to the proposed settlement was required to file a written objection with Gilardi by July 22, 2016, the short-form notice mailed to class members informed them that they could object to the proposed settlement "by filing a written objection and/or by appearing at the settlement hearing." In this respect, the language of the short-form notice actually mailed to the class members differed from the language of the short-form notice approved by the trial court in conjunction with its June 1, 2016, order; the approved short-form notice provided that "[a] class member may [object] by filing a written objection and by appearing at the settlement hearing ...." (Emphasis added.) Class counsel asserts in one of its briefs filed with this Court that the language was changed before the short-form notice was mailed in an attempt to clarify that an objector was not required to attend the August 8 fairness hearing in order to assert an objection.
At approximately this same time, the long-form notice was posted on the settlement Web site. The long-form notice provided that, "[a]t the settlement hearing, *943 class counsel will request the court to award attorneys' fees not to exceed 40% of the settlement amount, plus expenses not to exceed $3,000,000." On July 22, 2016, Walker and the Georgia Urology claimants filed their objections to the proposed settlement; Walker also submitted notice that he intended to appear at the August 8 fairness hearing. Their objections to the proposed settlement raised the same general issues-that they were given insufficient time and information to properly consider the settlement and to prepare any objections; that they were given insufficient time to gather the approximately 20-year-old records needed to establish their claims; and that a potential award of attorney fees up to $124 million was excessive. On July 29, 2016, class counsel filed their attorney-fee application formally requesting $124 million in attorney fees, an additional $2,585,933 for expenses, and $50,000 service awards for each of three current or former named plaintiffs; class counsel also filed responses to the objections made by Walker and the Georgia Urology claimants. This attorney-fee application had not been previously posted on the settlement Web site or made available for class members to review.
On August 5, 2016, Lawler filed an objection to the proposed settlement; his objection focused solely on class counsel's requested $124 million attorney fee. Lawler also filed notice with the trial court that he planned to be represented at the August 8 fairness hearing. The fairness hearing was subsequently held as scheduled, and, although class counsel argued that Lawler's objection was untimely, the trial court nevertheless allowed Lawler to present his argument. Walker also presented argument on his objections at the hearing, and class counsel argued in response that Walker, as well as the Georgia Urology claimants, had failed to establish that they were class members and that their objections should be overruled on that basis.[2] Class counsel also argued generally that the arguments made by the various objectors should be rejected on their merits because, they argued, the schedule set by the trial court provided adequate notice in all respects and the $124 million attorney-fee award was warranted.
On August 15, 2016, the trial court entered a number of orders by which it overruled the objections of Lawler and Walker, granted in whole class counsel's attorney-fee application with respect to the requests for an attorney fee, expenses, and service awards for the named plaintiffs, and entered a final judgment approving the terms of the $310 million settlement. On September 13, 2016, Walker filed a motion pursuant to Rule 59(e), Ala. R. Civ. P., asking the trial court to alter, amend, or vacate its orders overruling his objection, granting class counsel's attorney-fee application, and entering a final judgment. Thereafter, Lawler, Walker, and the Georgia Urology claimants, before the September 30, 2016, deadline, filed claim forms with Gilardi seeking to establish their eligibility to receive compensation from the settlement fund. After that deadline passed, however, class counsel moved the trial court to review the claim forms filed by Walker and the Georgia Urology claimants to determine whether they had in fact asserted valid claims; class counsel argued that they had not and urged the trial court to overrule their objections and Walker's Rule 59(e) motion on that basis.
Class counsel thereafter also moved the trial court to enter a new order explicitly *944 finding that Lawler's objection was untimely. On October 31, 2016, the trial court entered an order stating that Lawler's objection was both untimely and without merit and another order holding that the Georgia Urology claimants had failed to present evidence establishing either (1) that they were members of the class or (2) that they had suffered a loss that entitled them to compensation from the settlement fund. On November 7, 2016, the trial court entered a similar order holding that the claim forms submitted by Walker also failed to establish that he was entitled to any share of the settlement. On November 10, 2016, the trial court denied Walker's Rule 59(e) motion and, pursuant to a motion jointly filed by the parties seeking to resolve perceived procedural issues related to its previous orders, entered a new order restating the terms of its previous order awarding class counsel the requested attorney fee and expenses, as well as providing service awards to the named plaintiffs.
Out of an abundance of caution, the objectors had all filed separate notices of appeal to this Court before the entry of the trial court's November 10 orders, and, pursuant to Rule 4(a)(5), Ala. R. App. P., those notices of appeal were held in abeyance while Walker's Rule 59(e) motion was pending. Following the resolution of that motion, the notices of appeal became effective, and the appellate process began in earnest. Because the objectors stipulated that they were not contesting the general terms of the settlement agreement, Caremark and its insurer subsequently transferred the agreed-upon $310 million into a settlement fund. The trial court thereafter also authorized the disbursement of the awarded attorney fee, expense reimbursement, and service awards. On December 13, 2016, this Court consolidated Lawler's appeal (no. 1151347), Walker's appeal (no. 1160049), and the Georgia Urology claimants' appeal (no. 1160158) for review based on the similarities of the issues presented.
II.
In Perdue v. Green, 127 So.3d 343, 356 (Ala. 2012), this Court explained the standard of review applicable in appeals such as these where objectors seek appellate review of a trial court's judgment approving the settlement of a class action:
" '[T]he standard of review applicable to a trial court's approval of a proposed settlement of a class action is as follows:
" ' "There can be no settlement [of a class action] without the trial court's approval. Rule 23(e) [Ala. R. Civ. P.]. Requiring the trial court's approval of the settlement protects the class from unjust settlements or voluntary dismissals. The burden is on the proponents of the settlement to show that it is fair, adequate, and reasonable. This Court's standard of review is to determine whether the trial court abused its discretion. Great weight is given to the trial court's views, because that court has been 'exposed to the litigants, and their strategies, positions, and proofs.' "
" ' Adams v. Robertson, 676 So.2d 1265, 1272-73 (Ala. 1995) (citations omitted).'
" Disch v. Hicks, 900 So.2d 399, 404 (Ala. 2004)."
Thus, we must ultimately determine whether the trial court exceeded its discretion in ruling adversely to the objectors.
III.
We first consider Lawler's appeal. Lawler argues (1) that the trial court denied the class due process by requiring class members to file objections to any requested attorney fee before the application for such a fee was actually filed and (2) that the $124 million attorney fee awarded class counsel is excessive and constitutes a *945 windfall for class counsel. However, before considering these arguments, we first consider class counsel's motion to dismiss Lawler's appeal because, class counsel argues, he lacks the necessary "standing."[3] Class counsel first argues that Lawler's appeal-and, for that matter, all of these consolidated appeals-should be dismissed because Lawler and the other objectors failed to formally intervene in the proceedings before the trial court. It is undisputed, class counsel argues, that "one who is not a party to a cause cannot appeal." Sho-Me Motor Lodges, Inc. v. Jehle-Slauson Constr. Co., 466 So.2d 83, 88 (Ala. 1985). See also StillWaters Residential Ass'n, Inc. v. SW Props., LLC, 137 So.3d 931, 932 (Ala. Civ. App. 2013) (explaining that the failure to intervene precludes an interested individual or entity from appealing a judgment).
Lawler, however, argues that this Court should follow the lead of the Supreme Court of the United States, which held in Devlin v. Scardelletti, 536 U.S. 1, 14, 122 S.Ct. 2005, 153 L.Ed.2d 27 (2002), "that nonnamed class members ... who have objected in a timely manner to approval of the settlement at a fairness hearing have the power to bring an appeal without first intervening." Class counsel in response has identified caselaw from some states that have declined to apply Devlin to class actions brought under the rules of procedure of their states, and they urge this Court to join that group. See Hernandez v. Restoration Hardware, Inc., 245 Cal.App.4th 651, 199 Cal.Rptr.3d 719 (2016) (dismissing class member's appeal of judgment where class member did not intervene),[4] and City of O'Fallon v. CenturyLink, Inc., 491 S.W.3d 276 (Mo. Ct. App. 2016) (questioning standing of appellant that had not intervened in the trial court). Class counsel also argues that the rationale of Devlin applies only to classes certified pursuant to Rule 23(b)(1) or (b)(2), Ala. R. Civ. P., where class members have no ability to opt out of the class and a judgment that would bind them, and that Devlin should not apply in the instant case, which was certified pursuant to Rule 23(b)(3) and allows class members to opt out if they are unsatisfied with the terms of a proposed settlement. See Devlin, 536 U.S. at 10 ("[I]n light of the fact that [the objector] had no ability to opt out of the settlement, see Fed. Rule Civ. Proc. 23(b)(1), appealing the approval of the settlement is [objector's] only means of protecting himself from being bound by a disposition of his rights he finds unacceptable and that a reviewing court might find legally inadequate."); see also Barnhill v. Florida Microsoft Anti-Trust Litig., 905 So.2d 195, 199 (Fla. Dist. Ct. App. 2005) (discussing rationale of Devlin and concluding that "the [appellants] were not bound by the terms of the settlement because they had the opportunity to opt out. Accordingly, there is no reason to allow them to appeal without intervening.").[5]
*946 This Court has not expressly adopted the holding of Devlin to cases such as the case underlying these appeals, although, in Perdue, 127 So.3d at 361, this Court did cite Devlin for the proposition that objectors can appeal that aspect of a trial court's judgment approving a settlement that affects them. Notably, however, Perdue did not involve a class certified pursuant to Rule 23(b)(3). The United States Court of Appeals for the Eleventh Circuit, however, recently considered the applicability of Devlin to class actions in which the class was certified pursuant to Rule 23(b)(3), Fed. R. Civ. P., and concluded that the rationale of Devlin still applied:
"As an initial matter we must decide whether [the objectors], who are neither named class representatives nor intervenors, have the power to bring this appeal. The general rule is 'only parties to a lawsuit, or those that properly become parties, may appeal an adverse judgment.' Marino v. Ortiz, 484 U.S. 301, 304 (1988) (per curiam). But in Devlin v. Scardelletti, 536 U.S. 1 (2002), the Supreme Court held 'that nonnamed class members ... who have objected in a timely manner to approval of the settlement at the fairness hearing have the power to bring an appeal without first intervening.' Id. at 14.
"Despite differences between Devlin and this case, we will apply Devlin's rule to [the objectors]. The objector in Devlin was part of a mandatory class with no opt-out rights certified under Rule 23(b)(1). See id. at 5, 10-11. The Supreme Court recognized that because the objector 'had no ability to opt out of the settlement,' appealing the settlement was his 'only means of protecting himself from being bound by' its terms. Id. at 10-11. Here in contrast, the class was certified under Rule 23(b)(3)[, Fed. R. Civ. P.]. That means [the objectors] could have opted out of the class. See Amchem Prod., Inc. v. Windsor, 521 U.S. 591, 617 (1997). Nevertheless, persuasive authority convinces us to apply Devlin's rule here. That is because ' Devlin is about party status and one who could cease to be a party is still a party until opting out.' Nat'l Ass'n of Chain Drug Stores v. New England Carpenters Health Benefits Fund, 582 F.3d 30, 40 (1st Cir. 2009) ; accord Poertner v.Gillette Co., 618 Fed.Appx. 624, 627-28 (11th Cir. 2015) (per curiam) (unpublished); Fidel v. Farley, 534 F.3d 508, 512-13 (6th Cir. 2008) ; Churchill Vill., L.L.C. v. Gen. Elec., 361 F.3d 566, 572 (9th Cir. 2004) ; In re Integra Realty Res., Inc., 354 F.3d 1246, 1257 (10th Cir. 2004). Therefore, [the objectors], as objecting class members who did not opt out of the settlement, may bring this appeal."
Carter v. Forjas Taurus S.A., (No. 16-15277) 701 F.App'x 759, 764 (11th Cir. 2017) (not selected for publication in Federal Reporter). See also National Ass'n of Chain Drug Stores v. New England Carpenters Health Benefits Fund, 582 F.3d 30, 39-40 (1st Cir. 2009) ("[T]he weight of authority holds that Devlin applies to all class actions."). We agree with the rationale of Carter and the cases cited in the excerpt quoted above. "The reality of class action litigation-wherein each class member is generally entitled to only a small damages claim-necessitates the application of Devlin to Rule 23(b)(3) class actions." Fidel v. Farley, 534 F.3d 508, 513 (6th Cir. 2008). Accordingly, we explicitly adopt the holding of Devlin for class actions brought in Alabama state courts and reject class counsel's argument that Lawler's and the other objectors' appeals should be dismissed because the objectors did not first intervene in the trial court.
*947 Class counsel also argues that Lawler's appeal should be dismissed because Lawler did not file his objections until August 5, 2016-after the July 22, 2016, deadline set by the trial court. As the United States Court of Appeals for the Fifth Circuit recognized in Farber v. Crestwood Midstream Partners L.P., 863 F.3d 410, 418 (5th Cir. 2017) : "Devlin's specific exception for nonparty objectors is limited to those 'who have objected in a timely manner.' " (Quoting Devlin, 536 U.S. at 14 ; emphasis added.) Unlike Farber, however, this is not a case where the alleged untimely objector admitted receiving notice of the date written objections were due, but then consciously decided to continue with a planned two-week vacation before returning and filing an objection two weeks after the deadline set by the trial court. 863 F.3d at 415. Rather, Lawler received a mailed notice informing him that he could object to the proposed settlement "by filing a written objection and/or by appearing at the settlement hearing." Lawler in fact subsequently appeared through counsel at the settlement hearing and voiced his objection-just as the notice he received informed him he could do.
Class counsel argues that it was made clear in court proceedings, in the long-form notice posted on the settlement Web site, and in the trial court's June 1, 2016, order giving preliminary approval to the settlement that any objector was required to file a written objection by July 22, 2016. However, although the totality of the information presented on the settlement Web site might have been more clear with regard to the intended procedure and deadlines relevant to filing objections, we decline to hold Lawler's objection untimely on that basis. The short-form notice sent to Lawler contained specific instructions on how to file an objection; after listing the date, time, and location of the settlement hearing, that notice instructed Lawler that class members could make their objections known "by filing a written objection and/or by appearing at the settlement hearing." Thus, the short-form notice did not merely contain a general statement informing class members of their right to file an objection that would have required them to make further inquiry to discover the process for doing so; rather, for all that appears, the notice contained all that information. Lawler's action in waiting to file an objection until after the July 22, 2016, deadline set by the trial court was consistent with the short-form notice he was sent telling him that he could object to the proposed settlement "by filing a written objection and/or by appearing at the settlement hearing."[6] This Court has explained that due process is fundamentally about fair play, see, e.g., Industrial Chem. & Fiberglass Corp. v. Chandler, 547 So.2d 812, 835 (Ala. 1988) (on application for rehearing), and it would hardly be fair of this Court or comport with notions of due process to punish Lawler for acting in accordance with the notice actually provided to him.
It is notable, moreover, that the relevant language in the short-form notice sent to Lawler was not the language approved by the trial court; rather, it is language that was unilaterally added to the short-form notice by class counsel. Although class counsel asserts that they were attempting to resolve a different perceived ambiguity in the language approved by the trial court when they added the language, any ambiguity that was a product of that change *948 should be construed against class counsel under the doctrine of contra proferentem. See Jehle-Slauson Constr. Co. v. Hood-Rich Architects & Consulting Eng'rs, 435 So.2d 716, 720 (Ala. 1983) (explaining that under the doctrine of contra proferentem an ambiguity in a writing is construed against the drafting party responsible for the ambiguity). We accordingly find no merit in class counsel's argument that Lawler's appeal should be dismissed on the basis of his allegedly untimely objection, and, to the extent it overruled Lawler's objections on that basis, the trial court exceeded its discretion in doing so.
Having concluded that Lawler's appeal is properly before this Court, we now turn to the merits of his arguments. He, and the other objectors as well, argues that the schedule set by the trial court provided insufficient opportunity for class members to object to class counsel's attorney-fee application because that schedule required them to state their objections by July 22, 2016, even though class counsel was not required to file its attorney-fee application, and did not in fact do so, until July 29, 2016.[7] At least four United States Courts of Appeals have indicated that such a schedule is problematic; however, their holdings largely relied on the language of Rule 23(h), Fed. R. Civ. P., which has no counterpart in the Alabama Rules of Civil Procedure. See Keil v. Lopez, 862 F.3d 685, 705 (8th Cir. 2017), In re National Football League Players Concussion Injury Litig., 821 F.3d 410, 446 (3d Cir. 2016), Redman v. RadioShack Corp., 768 F.3d 622, 638 (7th Cir. 2014), and In re Mercury Interactive Corp. Sec. Litig., 618 F.3d 988, 994 (9th Cir. 2010). Rule 23(h), Fed. R. Civ. P., provides, in relevant part:
"In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement. The following procedures apply:
"(1) A claim for an award must be made by motion under Rule 54(d)(2), subject to the provisions of this subdivision (h), at a time the court sets. Notice of the motion must be served on all parties and, for motions by class counsel, directed to class members in a reasonable manner.
"(2) A class member, or a party from whom payment is sought, may object to the motion."
Even though Alabama's Rule 23 has no equivalent to Federal Rule 23(h), courts considering whether Federal Rule 23(h) has been violated have generally recognized that there is a concomitant due-process issue as well. See, e.g., Mercury, 618 F.3d at 993 ("We hold that the district court abused its discretion when it erred as a matter of law by misapplying Rule 23(h) in setting the objection deadline for class members on a date before the deadline for lead counsel to file their fee motion. Moreover, the practice borders on a denial of due process because it deprives objecting class members of a full and fair opportunity to contest class counsel's fee motion."). Indeed, it would seem that the requirement in Federal Rule 23(h)(2) that class members be given an opportunity to object to class counsel's request for attorney fees is essentially a codification of *949 basic due-process principles. As this Court has explained:
"Procedural due process, as guaranteed by the Fourteenth Amendment to the United States Constitution and Article I, § 6, of the Alabama Constitution of 1901, broadly speaking, contemplates the rudimentary requirements of fair play, which include a fair and open hearing before a legally constituted court or other authority, with notice and the opportunity to present evidence and argument, representation by counsel, if desired, and information as to the claims of the opposing party, with reasonable opportunity to controvert them."
Ex parte Weeks, 611 So.2d 259, 261 (Ala. 1992) (emphasis added). See also Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950) ("An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." (emphasis added)).
As Ex parte Weeks and Mullane explain, a fundamental element of due process is allowing parties that will be bound by a court's decision to have a reasonable opportunity to make their position and any objections known. As the federal appellate courts that have rejected the practice of requiring class members to object to class counsel's attorney-fee requests before those requests are filed have concluded, that opportunity is not provided under those circumstances. The facts in Mercury are particularly similar to the facts in the instant case. In Mercury, the settlement notice sent to class members informed class members that class counsel would request the award of an attorney fee equal to 25% of the $117.5 million settlement fund, or $29.375 million. 618 F.3d at 990. Class members were given until September 4, 2008, to file written objections to any element of the proposed settlement; two objections to the potential attorney fee were filed by that date. Id. at 991. Class counsel, however, in compliance with the schedule set by the trial court, did not file its formal application for an attorney fee and supporting documentation until September 18, 2008. On September 25, 2008, the trial court held a fairness hearing and approved the requested attorney fee, overruling the two objections that had been filed. Id. After one of those objectors appealed, the United States Court of Appeals for the Ninth Circuit held that the schedule ordered by the trial court was unlawful, explaining:
"Moore's Federal Practice counsels that '[a]ny objection deadline set by the court should provide the eligible parties with an adequate opportunity to review all of the materials that may have been submitted in support of the motion and, in an appropriate case, conduct discovery concerning the fees request.' 5 Moore's Federal Practice § 23.124[4] (Matthew Bender 3d ed. 2009). Allowing class members an opportunity thoroughly to examine counsel's fee motion, inquire into the bases for various charges and ensure that they are adequately documented and supported is essential for the protection of the rights of class members. It also ensures that the district court, acting as a fiduciary for the class, is presented with adequate, and adequately-tested, information to evaluate the reasonableness of a proposed fee.
"In this case, [the objectors were] denied such an opportunity. At the time that [their] objections to the fee request were due, [the objectors] could make only generalized arguments about the size of the total fee because they were only provided with generalized information. [The objectors] could not provide *950 the court with critiques of the specific work done by counsel when they were furnished with no information of what that work was, how much time it consumed, and whether and how it contributed to the benefit of the class.
"During the fee-setting stage of common fund class action suits such as this one, '[p]laintiffs' counsel, otherwise a fiduciary for the class, ... become[s] a claimant against the fund created for the benefit of the class.' Class Plaintiffs v. City of Seattle (In re Wash. Pub. Power Supply Sys. Sec. Litig.), 19 F.3d 1291, 1302 (9th Cir. 1994) (internal quotation marks omitted). This shift puts plaintiffs' counsel's understandable interest in getting paid the most for its work representing the class at odds with the class' interest in securing the largest possible recovery for its members. Because 'the relationship between plaintiffs and their attorneys turns adversarial at the fee-setting stage, courts have stressed that when awarding attorneys' fees from a common fund, the district court must assume the role of fiduciary for the class plaintiffs.' Id. As a fiduciary for the class, the district court must 'act with "a jealous regard to the rights of those who are interested in the fund" in determining what a proper fee award is.' Id. Included in that fiduciary obligation is the duty to ensure that the class is afforded the opportunity to represent its own best interests. When the district court sets a schedule that denies the class an adequate opportunity to review and prepare objections to class counsel's completed fee motion, it fails to fulfill its fiduciary responsibilities to the class."
Mercury, 618 F.3d at 994-95. The Court of Appeals for the Ninth Circuit accordingly vacated the order approving the fee request and remanded the matter to the trial court, which thereafter issued new notice to class members informing them that a renewed motion seeking an award of attorney fees would be filed by December 14, 2010, that any objections to that motion were required to be filed by January 13, 2011, and that a final hearing would be held February 18, 2011. In re Mercury Interactive Corp. Sec. Litig., (No. 5:05-CV-03395-JF, March 3, 2011) (N.D. Cal.) (unpublished order).[8]
Although the Court of Appeals for the Ninth Circuit in Mercury couched its holding in terms of Federal Rule 23(h), its logic similarly applies in this case, where class members were informed on June 17, 2016, that class counsel would seek an attorney fee of up to 40% of the settlement fund and that any objections to whatever attorney fee class counsel ultimately sought had to be filed by July 22, 2016, even though class counsel was not required to file its actual attorney-fee application until one week later on July 29, 2016. Class counsel argues that class members were given notice that class counsel would be requesting an attorney fee of up to 40% before objections were due; thus, class counsel argues, class members were not harmed by the schedule because they could still file timely objections to that expected request without having seen the actual attorney-fee application. This argument, however, fails to acknowledge that potential objectors were limited to making only general objections under these circumstances. As the United States Court of Appeals for the Seventh Circuit explained in Redman, 768 F.3d at 638 :
"From reading the proposed settlement the objectors knew that class counsel were likely to ask for $1 million in attorneys'
*951 fees, but they were handicapped in objecting because the details of class counsel's hours and expenses were submitted later, with the fee motion, and so they did not have all the information they needed to justify their objections. The objectors were also handicapped by not knowing the rationale that would be offered for the fee request, a matter of particular significance in this case because of the invocation of administrative costs as a factor warranting increased fees. There was no excuse for permitting so irregular, indeed unlawful, a procedure."
See also Mercury, 618 F.3d at 994 ("At the time that [their] objections to the fee request were due, [the objectors] could make only generalized arguments about the size of the total fee because they were only provided with generalized information. [The objectors] could not provide the court with critiques of the specific work done by counsel when they were furnished with no information of what that work was, how much time it consumed, and whether and how it contributed to the benefit of the class.").
We agree with the rationales of these courts and, especially, the conclusion in Redman that this type of procedure is "irregular [and] indeed unlawful." Redman, 768 F.3d at 638. The class members in this case were not afforded due process inasmuch as they were not allowed to view, consider, and respond to class counsel's attorney-fee application before they were required to file any objections to that application. See Ex parte Weeks, 611 So.2d at 261 (holding that due process requires that parties be given information regarding the claims of an opposing party and a reasonable opportunity to controvert them). It is insufficient that class members had an opportunity to file a general objection to what they anticipated class counsel might request as an attorney-fee award; principles of due process require that they have an opportunity to respond to the attorney-fee application that is actually filed. The long-form notice in fact promised class members this opportunity inasmuch as it stated that "[a]ny class member may object to the proposed settlement, the plan of allocation, the fee and expense application and/or incentive awards."[9] In authorizing a schedule requiring class members to object to class counsel's requested attorney fee before class counsel filed its attorney-fee application, the trial court acted beyond its discretion and violated the class members' due-process rights.
The trial court's error being established, however, we must still consider whether that error was harmless. See Rule 45, Ala. R. App. P. ("No judgment may be reversed or set aside ... for error as to any matter of pleading or procedure, unless in the opinion of the court to which the appeal is taken or application is made, after an examination of the entire cause, it should appear that the error complained of has probably injuriously affected substantial rights of the parties."), and Keil, 862 F.3d at 705-06 (concluding that trial court's error in setting the deadline for objections before the deadline for class counsel to file their fee motion was harmless under the circumstances). Class counsel, in fact, has argued that any error in the timing of the filing of its fee and expense application was harmless because *952 Walker and the Georgia Urology claimants filed additional motions with the trial court explaining their objections after class counsel filed its application, and Walker and Lawler also presented arguments orally at the August 8 hearing. In Cassese v. Williams, 503 F.App'x 55, 58 (2d Cir. 2012) (not selected for publication in Federal Reporter), the United States Court of Appeals for the Second Circuit declined to follow the rationale of the Mercury court at least partially for this reason, explaining:
"In its ... fee motion, class counsel requested fees and costs in the precise amounts specified in the settlement notice and divulged additional information regarding counsel's billing rates, hours worked, and tasks performed. Any objectors then had two weeks to crystallize their objections and request further information before attending the fairness hearing. With the objectors here having availed themselves of those opportunities, we identify no abuse of discretion or due process denial in that portion of the district court's scheduling order relating to the fee motion."
See also Keil, 862 F.3d at 705 (holding that the trial court erred in closing objections before class counsel's attorney-fee application was filed but that error was harmless because the objectors subsequently had an opportunity to respond to the specific arguments contained within class counsel's fee application).
We decline, however, to find the error in this case harmless. We first note that the interval between class counsel's filing of its application for an attorney fee and the subsequent fairness hearing was only 10 days-5 business days. Although class counsel has cited several published opinions in which courts have approved of schedules such as the one being challenged in this case, none of those opinions involved as short an interval between the time the attorney-fee application was filed and the settlement hearing as in this case. See, e.g., CertainTeed Fiber Cement Siding Litig., 303 F.R.D. 199, 222 (E.D. Pa. 2014) (three weeks), and Saccoccio v. JP Morgan Chase Bank, N.A., 297 F.R.D. 683, 699 (S.D. Fla. 2014) (two weeks). Like the Keil court, "[w]e do not purport to decide how much time after the fee motion deadline is sufficient to provide class members with an adequate opportunity to object to the motion," 862 F.3d at 705 ; however, the short interval provided class members in this case surely borders on what due process requires.
Additionally, we note that in most of the cases that have been brought to this Court's attention in which a court has rejected an objector's arguments concerning a schedule requiring the objector to object to an attorney-fee application before that application is actually filed, the ruling court has noted that the objector ultimately was provided access to detailed information about the hours worked by class counsel, along with descriptions of the specific tasks class counsel performed during those hours, and then had at least some opportunity to respond to that information. See, e.g., Keil, 862 F.3d at 701 (noting that "the hours and rates submitted by class counsel were reasonable"); Cassese, 503 F.App'x at 58 (noting that class counsel's fee application "divulged additional information regarding counsel's billing rates, hours worked, and tasks performed"); and CertainTeed, 303 F.R.D. at 223 (noting that "[c]lass counsel have spent over 12,656 hours in prosecuting this case on behalf of the settlement class"). In this case, however, the class was never provided such information. Class counsel stated in its attorney-fee application that the amount of time it expended on this case was irrelevant or of only minor importance, and it repeats that claim on appeal, arguing that this Court in *953 Edelman & Combs v. Law, 663 So.2d 957, 959 (Ala. 1995), held that "in a class action where the plaintiff class prevails and the lawyer's efforts result in a recovery of a fund, by way of settlement or trial, a reasonable attorney fee should be determined as a percentage of the amount agreed upon in settlement or recovered at trial." However, although it is true that Edelman warns trial courts against "a strict reliance" on the time-expended factor when awarding an attorney fee in a common-fund case, 663 So.2d at 960, it is not accurate to say that Edelman declared the time-expended factor to be irrelevant in common-fund cases. To the contrary, Edelman states:
"We hold that the lawyers representing the plaintiff class in this case are entitled to a reasonable percentage of the amount of the settlement. In determining that percentage, the trial court should consider all relevant factors, including the number of hours expended on behalf of the class. Several factors, including the number of lawyers who were actively engaged for over four years in the handling of the claims, the complexity of the litigation, as well as the management responsibilities inherent in a class action, and the result obtained, would justify a[n] award of an amount between 20% and 33 1/3% of the amount of the settlement. However, the plaintiffs' attorneys did not introduce any evidence of the actual time spent on behalf of the class. The trial court should consider that factor in determining the appropriate percentage to be awarded in this case."
663 So.2d at 961 (emphasis added.)[10]
Class counsel notes also, however, that the trial court has stated that it had seen the thousands of hours of time expended by class counsel over the many years this case has been pending and that it did not need time sheets to conclude that the time class counsel spent on the case weighed in favor of the $124 million award. However, although the trial court certainly has some personal knowledge of the time expended by class counsel in this case, Lawler argues that the facts of this case demand a closer examination of those hours. Specifically, he argues that much of the time expended by class counsel in this case, and the corresponding delay in reaching a final resolution, is due to class counsel's own missteps and questionable decisions. As examples, Lawler notes that it was class counsel that was initially "duped" in the original settlement of the MedPartners class action, that class counsel's unsuccessful attempt to avoid the class-certification process, as detailed in Ex parte Caremark RX, Inc., 956 So.2d 1117 (Ala. 2006), added years of delay and additional expenses to the litigation, that much of the other time expended by class counsel in this case was devoted to class counsel's efforts defending themselves from attempts to disqualify them and from other attorneys seeking to replace them as a result of class counsel's previous decisions, and that class counsel's efforts of late have been directed toward avoiding a meaningful review of their requested attorney fee to the express detriment of the class.
Lawler argues that the time expended on those efforts cannot be used by class counsel to justify an attorney fee because, he argues, that time did not benefit the class; class counsel, however, argues that the $310 million settlement they ultimately negotiated demonstrates that those efforts all benefited the class. Without deciding this issue, we agree with Lawler that the class members are entitled to more information about the amount of time class counsel expended in this case and the manner in which that time was *954 spent. As explained in Edelman, 663 So.2d at 961, the amount of time expended on behalf of the class is still a relevant factor that should be considered when determining a reasonable attorney fee in a class-action case. Accordingly, class members are entitled to basic information in that regard so they can adequately argue any objections they have, as is their due-process right. On remand, the trial court should direct a process whereby that information is provided to the objectors; the objectors subsequently are provided with adequate time to restate their objections in light of that information; and the trial court then considers those objections and enters a new order awarding an attorney fee.[11] Our resolution of this issue obviates the need to conduct our own review of the reasonableness of the awarded attorney fee at this time, as well as the need to consider the other issues raised by Lawler and the other objectors.[12]
IV.
After class counsel negotiated a $310 million settlement with Caremark and its insurer resolving class members' fraud and suppression claims stemming from the previous settlement of the MedPartners class action, the objectors filed notice with the trial court that they objected to class counsel's request that 40% of the settlement, or $124 million, be paid to them as an attorney fee. The trial court thereafter overruled those objections and entered an order awarding class counsel the $124 million attorney fee they had requested. The objectors subsequently separately appealed that award to this Court, arguing that they had been given insufficient opportunity to object to class counsel's requested attorney fee inasmuch as their objections were due before class counsel's attorney-fee application was filed, and that the attorney fee ultimately awarded was excessive. We agree with Lawler's and the other objectors' argument that a schedule requiring class members to object to class counsel's attorney-fee request before any such request is formally made violates class members' due-process rights. Furthermore, we agree with Lawler that the objectors were entitled to more information from class counsel about the time expended on this case in order to allow them to properly articulate their objections. Accordingly, we now vacate the order entered by the trial court awarding class counsel an attorney fee of $124 million. On remand, class counsel may file a new attorney-fee application, including more detailed information regarding the time expended in this case and how that time was spent. The objectors shall then be given a reasonable opportunity to review that application and may, if they still *955 have objections to class counsel's new application, file those objections with the trial court. After the trial court considers those objections and enters a new order making an award of attorney fees, any party with a grievance may file a new appeal with this Court.
1151347-ORDER VACATED AND CASE REMANDED.
1160049-ORDER VACATED AND CASE REMANDED.
1160158-ORDER VACATED AND CASE REMANDED.
Shaw, Wise, and Sellers, JJ., concur.
Parker, J., concurs in the result.

Sam Johnson and City of Birmingham Retirement and Relief System, class representatives, brought the underlying action for themselves and on behalf of a class of all others who are similarly situated.

The trial court's June 1, 2016, order giving preliminary approval to the proposed settlement and the long-form notice posted on the settlement Web site stated that all written objections to the proposed settlement must include proof that the objector is a member of the class.

Class counsel acknowledges this Court's recent caselaw distinguishing standing from similar concepts such as real party in interest and failure to state a claim, see, e.g., BAC Home Loan Servicing, LP, 159 So.3d 31, 40-47 (Ala. 2013), and argues that, regardless of the terminology employed, Lawler is the wrong person to pursue his stated objections.

We note that the Supreme Court of California has granted a petition to review the holding in Hernandez. See Hernandez v. Muller, 203 Cal.Rptr.3d 273, 372 P.3d 200 (2016).

Rule 23(b), Ala. R. Civ. P., is substantially similar to Rule 23(b), Fed. R. Civ. P. "Federal cases construing the Federal Rules of Civil Procedure are persuasive authority in construing the Alabama Rules of Civil Procedure, which were patterned after the Federal Rules of Civil Procedure." Ex parte Novartis Pharms. Corp., 975 So.2d 297, 300 n. 2 (Ala. 2007).

Class counsel emphasizes that Lawler never filed an affidavit or gave testimony regarding what he understood the short-form notice to mean. However, the necessity for such evidence is not needed in this case, where the language of the notice is undisputed and speaks for itself.

The objectors have also all noted that the trial court's June 1 order required class counsel to place their attorney-fee application on the settlement Web site by June 17, but class counsel failed to do so. Class counsel argues that this requirement was mistakenly included in the June 1 order and that the trial court always intended for the attorney-fee application to be filed and made public on July 29. The trial court indicated in a hearing conducted to consider Walker's Rule 59(e) motion that class counsel's position on this point is correct.

On remand, class counsel agreed to lower its requested attorney fee and the previous objectors withdrew their objections.

The long-form notice posted on June 17, 2016, also advised class members that "the fee and expense application, together with selected pleadings and other settlement-related documents may be viewed online at www.aig-caremarkclassaction.com." However, as explained, the fee and expense application was not actually posted until it was filed on July 29, 2016.

This Court has listed factors relevant to determining the reasonableness of attorney fees in Peebles v. Miley, 439 So.2d 137, 140-41 (Ala. 1983).

We further note that the information Lawler and the other objectors seek regarding the time class counsel has spent on this case will also better allow this Court to conduct a "meaningful review," Wehle v. Bradley, 195 So.3d 928, 946 (Ala. 2015), of the attorney fee awarded on remand if class counsel and the objectors are unable to resolve their dispute and a subsequent appeal is necessary.

Walker and the Georgia Urology claimants have argued in their appeals that the trial court wrongfully took consideration of their claims from Gilardi and determined that those claims were not valid. Because we have already determined that remand is appropriate, we decline to consider those arguments at this time. Appellate review in a piecemeal fashion is generally disfavored, Dzwonkowski v. Sonitrol of Mobile, Inc., 892 So.2d 354, 363 (Ala. 2004), and Walker and the Georgia Urology claimants can present their arguments regarding their claims to the trial court again on remand along with their objections regarding class counsel's attorney-fee application. Should an issue in that regard still exist after the trial court enters a new order making an award of attorney fees, Walker and the Georgia Urology claimants may argue them on appeal, along with any objections they have to that new attorney-fee award.